IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SPEECH FIRST, INC.,

*Plaintiff*,

v.

GREGORY L. FENVES,

*Defendant*.

Case No. 1:18-cv-1078-LY

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii
INTRODUCTION ............................................................................................................................... 1
ARGUMENT ....................................................................................................................................... 1
I.     Speech First Has Article III Standing. ............................................................................... 1
II.    The Challenged Policies Are Unconstitutional. ................................................................. 4
III.   The Other Preliminary-Injunction Factors Are Satisfied. ................................................. 5
CONCLUSION ................................................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*ACLU of Ill. v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ................................................................................................... 5

*Am. Commc'ns Ass'n v. Douds*,
  339 U.S. 382 (1950) ................................................................................................................ 3

*Austin LifeCare, Inc. v. City of Austin*,
  2014 WL 12774229 (W.D. Tex. 2014) .................................................................................. 5

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015) .................................................................................................. 3

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) .................................................................................................................. 3

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
  482 U.S. 569 (1987) ........................................................................................................... 2, 4

*Beckerman v. City of Tupelo*,
  664 F.2d 502 (5th Cir. 1981) .................................................................................................. 4

*Calif. Pro-Life Council, Inc. v. Getman*,
  328 F.3d 1088 (9th Cir. 2003) ................................................................................................ 1

*Christian Legal Soc'y v. Walker*,
  453 F.3d 853 (7th Cir. 2006) .................................................................................................. 5

*Ctr. for Individ. Freedom v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) .................................................................................................. 2

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
  600 F.2d 1184 (5th Cir. 1979) ................................................................................................ 4

*Dambrot v. Cent. Michigan Univ.*,
  55 F.3d 1177 (6th Cir. 1995) .................................................................................................. 2

*Daniels Health Scis. v. Vascular Health Scis.*,
  710 F.3d 579 (5th Cir. 2013) .................................................................................................. 1

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999) ........................................................................................................... 4, 5

*DeJohn v. Temple Univ.*,
  537 F.3d 301 (3d Cir. 2008) ................................................................................................... 5

*Doe v. Bolton*,
  410 U.S. 179 (1973) ................................................................................................................ 1

*FCC v. Fox Telev. Stations*,
  567 U.S. 239 (2012) ................................................................................................................ 5

*Hill v. City of Houston*,
  764 F.2d 1156 (5th Cir. 1985) ................................................................................................ 4

*Levin v. Harleston*,
    966 F.2d 85 (2d Cir. 1992) ................................................................................................. 3

*Lopez v. Candaele*,
    2009 WL 10698469 (C.D. Cal. 2009) ................................................................................ 4

*Majors v. Abell*,
    317 F.3d 719 (7th Cir. 2003) .............................................................................................. 2

*McKinley v. Abbott*,
    2010 WL 11545260 (W.D. Tex. 2010) ........................................................................... 1, 2

*N.H. Right to Life PAC v. Gardner*,
    99 F.3d 8 (1st Cir. 1996) ..................................................................................................... 1

*Nat'l People's Action v. City of Blue Island*,
    594 F. Supp. 72 (N.D. Ill. 1984) ......................................................................................... 5

*Okwedy v. Molinari*,
    333 F.3d 339 (2d Cir. 2003) ............................................................................................... 3

*Rangra v. Brown*,
    566 F.3d 515 (5th Cir. 2009) .............................................................................................. 1

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................................ 2

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) .............................................................................................. 5

*UWM Post, Inc. v. Bd. of Regents of Univ. of Wis.*,
    774 F. Supp. 1163 (E.D. Wis. 1991) ................................................................................... 2

*Whole Woman's Health v. Paxton*,
    264 F. Supp. 3d 813 (W.D. Tex. 2017) ............................................................................... 1

*Wollschlaeger v. Gov'r*,
    848 F.3d 1293 (11th Cir. 2017) (en banc) ...................................................................... 1, 3

### Other Authorities

*Bias Response Team Report 2017*, FIRE,
    bit.ly/2P9iEaj ...................................................................................................................... 4

*Spotlight on Speech Codes 2019*, FIRE,
    bit.ly/2RPW5p7 .................................................................................................................. 1

## INTRODUCTION

While the University insists that it "robustly protects … free speech," Resp. 1, it just earned its *twelfth* consecutive "red light" rating from FIRE, meaning it "clearly and substantially restricts protected speech." *Spotlight on Speech Codes 2019*, bit.ly/2RPW5p7. Despite the University's characterization of Speech First as "an advocacy group lacking any connection with the University," Resp. 2, Speech First has multiple members who attend the University, and the challenged policies flagrantly violate their rights—notwithstanding the University's generic paeans to free speech and its promises to use the policies responsibly. This Court should grant a preliminary injunction.

## ARGUMENT

To win a preliminary injunction, Speech First must prove *likely* success on standing and the merits—"not certainty." *Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 823 (W.D. Tex. 2017) (Yeakel, J.). "Likely" means Speech First "need only present a prima facie case, rather than meet the standard for summary judgment." *Daniels Health Scis. v. Vascular Health Scis.*, 710 F.3d 579, 584-85 (5th Cir. 2013). Speech First easily clears that bar, and it satisfies the other preliminary-injunction factors.

### I.   Speech First Has Article III Standing.

The University is correct that Speech First has standing if its members do, that its members have standing if the challenged policies "objectively" chill their speech, and that objective chill exists if there is a "credible threat" of enforcement. Resp. 2-3. The credible-threat standard is "'quite forgiving.'" *Wollschlaeger v. Gov'r*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc). "A court may assume a credible threat … when the [policy] facially restricts expressive activity by the class to which the plaintiff belongs." *McKinley v. Abbott*, 2010 WL 11545260, at *4 (W.D. Tex. 2010) (Yeakel, J.), *aff'd in relevant part*, 643 F.3d 403, 407 (5th Cir. 2011); *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996). Contrary to the University's arguments, Resp. 7-8, "no history of past enforcement" is required. *Rangra v. Brown*, 566 F.3d 515, 519 (5th Cir. 2009), *on reh'g en banc*, 584 F.3d 206; *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Calif. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094-95 (9th Cir. 2003). The "mere

1

existence of [the] allegedly vague or overbroad statute" creates the injury. *Ctr. for Individ. Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003).

There is a credible threat of enforcement here. The challenged policies are "aimed directly" at students—"the class to which [Speech First's members] belong." *McKinley*, 2010 WL 11545260, at *4. The threat is "bolstered" by the fact that *anyone* on campus can report violations. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014); *see* Norris Decl., Ex. A §13-204(e), Ex. B §7.3, Ex. C at 14, Ex. H. And the challenged policies "facially restrict" the speech of Speech First's members. While the University disputes this, Speech First only needs to prove that the challenged policies "arguably" cover its members' speech. *Driehaus*, 573 U.S. at 162. They do—both arguably and actually.

Verbal-Harassment Rule: The Rule reaches one-off "oral" statements that are "severe" and that "diminish[]" another student's education, including "personal attacks" based on "political views." Norris Decl., Ex. A, §13-204. While a separate provision says the University respects free speech, it clarifies that this respect is "subject … to" the University's "rules." §13-101(c). Anyway, such generic disclaimers (which *every* university makes) do not lessen the chilling effect of more specific speech restrictions. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995). Further, the Rule provides limited protection for "argument[s]" about "idea[s]," §13-204(b), but the First Amendment is not so limited, *see UWM Post, Inc. v. Bd. of Regents*, 774 F. Supp. 1163, 1178 (E.D. Wis. 1991). And the Rule protects speech only if it is "necessary" to express an idea, warning students that certain speech is "rarely, if ever, necessary." §13-204(b). Nor does the University explain how its instruction to interpret the Rule "narrowly"—after the fact, by courts, in litigation—could remove the *current* chill on students' speech. §13-204(e); *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575-76 (1987).

Acceptable Use Policy: The Policy broadly prohibits speech that others subjectively consider "[un]civil," "rude," "harassing," or repetitive. Norris Decl., Ex. B, §5.6. These provisions are enforceable rules: They use mandatory language, they appear in section V (titled "Requirements"), and

2

the Policy imposes "consequences for violating the rules listed in Section V," including "[r]evocation of access privileges," "[d]isciplinary probation," and "[s]uspension," §7.1. *See Wollschlaeger*, 848 F.3d at 1305-06. The Policy's generic disclaimers about free speech change nothing, *supra* 2, and expressly exclude violations of *any* "university rules" or "regulations," §§3.3, 7.2.1—including the Policy.

<u>Residence Hall Manual</u>: The Manual broadly states that "[u]ncivil" language is "not permitted," and that "harassment and intimidation" (defined by a long list of -isms, like "cissexism" and "ableism") is against University "policy" and will be "respond[ed]" to. Norris Decl., Ex. C at 18. These provisions are enforceable rules: They use mandatory language, they appear under separate headings in the section on "Student Conduct," and students must follow "all specific Housing policies articulated in the … Manual." *Id.* at 14-25. Further, University Housing has its own *separate* process for punishing violations of the Manual. *Id.* at 24-28. That is why the Manual states that "harassment *as defined in the Institutional Rules*" is handled by the Dean of Students, but "harassment or intimidation *in the residence hall environment*" (defined more broadly) is handled by Housing. *Id.* at 18 (emphasis added). Again, the generic disclaimer about free speech—in the section about "Posters," *id.* at 37-38—changes nothing.

<u>Campus Climate Response Team</u>: The University does not dispute that its subjective definitions of "bias incident" and "campus climate incident" cover Speech First's members; indeed, the CCRT has received hundreds of reports on similar speech. The University instead argues that the CCRT is not a "disciplinary" or "adjudicatory" body. Resp. 6-7. That is irrelevant. The government violates the First Amendment whenever it objectively chills speech, even if it uses "indirect 'discouragements,'" "coercion," "intimidation," or other actions "short of a direct prohibition on speech." *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 402 (1950); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230-31 (7th Cir. 2015); *Levin v. Harleston*, 966 F.2d 85, 89 (2d Cir. 1992). Even calls for "voluntary" dialogue with officials who lack direct regulatory authority can illegally chill speech. *Id.*; *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963).

As FIRE's study found, "Bias Response Teams create—indeed, they are intended to create—a chilling effect on campus expression." *Bias Response Team Report 2017*, FIRE, at 5. The CCRT chills speech by "creating a 'process-is-punishment' mechanism that deters people from speaking out." *Id.* at 28. Students stay quiet because, if they say something perceived as "biased," it will get reported, forever logged on a public website, trigger "information gathering" efforts and "meetings" with university administrators, and risk informal punishments like training, re-education, dispute resolution, or "referral" for formal discipline by a CCRT "partner," Norris Decl., Ex. J—consequences that the University's many declarations do not disclaim. The CCRT also chills speech by implicitly threatening discipline. The CCRT is designed to look like a disciplinary body—from its name, to its terminology (calling students "offenders"), to its members (including disciplinarians and police officers). Exs. H, F.

## II.  The Challenged Policies Are Unconstitutional.

<u>Overbreadth</u>: The University does not dispute that its policies (other than the verbal-harassment rule) are facially overbroad. It briefly mentions the possibility of a "reasonable limiting construction," Resp. 10, but the University never actually *offers* one. Defendants cannot defeat a preliminary injunction by "simpl[y] allu[ding]" to "the existence of a plausible defense." *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979). And federalism prohibits federal courts from "sua sponte proffer[ing] possible constructions that would limit [the] overbreadth" of state policies. *Hill v. City of Houston*, 764 F.2d 1156, 1165 (5th Cir. 1985); *accord Beckerman v. City of Tupelo*, 664 F.2d 502, 509 (5th Cir. 1981). Nor is there an obvious limiting construction that would simultaneously cure the policies' overbreadth, introduce no new vagueness, and not rewrite the policies' text. *Jews for Jesus*, 482 U.S. at 575-76; *Lopez v. Candaele*, 2009 WL 10698469, at *4 (C.D. Cal. 2009).

The University defends its verbal-harassment rule by arguing that it "tracks the essence of the *Davis* standard," Resp. 4, 9, but that is not good enough. *Davis* involved sexual harassment by "public schoolchildren." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 646 (1999). Because the free-speech

4

rights of adults at public universities are far broader, *DeJohn v. Temple Univ.*, 537 F.3d 301, 315 (3d Cir. 2008), universities must at least *scrupulously* comply with the *Davis* standard. The verbal-harassment rule does not: Its text is not limited to harassment that amounts to discrimination against a protected class, to harassment that "effectively denie[s]" access to University programs, or to harassment that is "severe, pervasive, *and* objectively offensive." *Davis*, 526 U.S. at 650-51 (emphasis added). It broadens each element of *Davis* and covers, contrary to *Davis*, "severe one-on-one peer harassment." *Id.* at 652.

<u>Vagueness</u>: The University does not dispute that the "necessary" element of the verbal-harassment rule is void for vagueness. *See* Mot. 7-8. Nor does it dispute that its other policies are unconstitutionally vague on their face. While the University points to its generic disclaimers about free speech, Resp. 10, those disclaimers do not narrow the challenged policies, *supra* 2-3, and cannot possibly make them less *vague. See Nat'l People's Action v. City of Blue Island*, 594 F. Supp. 72, 75-79 (N.D. Ill. 1984). The University also points to its "enforcement" of the challenged policies, Resp. 10, but its promise to use "prosecutorial discretion and good sense … does not cure what are otherwise unconstitutionally vague provisions." *Austin LifeCare, Inc. v. City of Austin*, 2014 WL 12774229, at *8 (W.D. Tex. 2014) (Yeakel, J.); *see FCC v. Fox Telev. Stations*, 567 U.S. 239, 255 (2012).

## III. The Other Preliminary-Injunction Factors Are Satisfied.

When a plaintiff proves a likely constitutional violation, the other preliminary-injunction factors are necessarily satisfied. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589-90 & n.1 (7th Cir. 2012). Even "'minimal'" First Amendment violations "'constitute[] irreparable injury,'" and preventing them is "'always in the public interest.'" *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Nor can the University be "harmed" by an injunction that stops it from "applying [its] polic[ies] in a manner that violates [students'] First Amendment rights"—something it has no right to do. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006).

## CONCLUSION

The Court should grant Speech First's motion for a preliminary injunction.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: February 4, 2019 |   /s/ *Cameron T. Norris*   |
|  | William S. Consovoy<br>Jeffrey M. Harris<br>Cameron T. Norris<br>CONSOVOY MCCARTHY PARK PLLC<br>3301 Wilson Boulevard, Suite 700<br>Arlington, VA 22201<br>(703) 243-9423<br>will@consovoymccarthy.com<br>jeff@consovoymccarthy.com<br>cam@consovoymccarthy.com |
|  | *Counsel for Plaintiff Speech First, Inc.* |

## CERTIFICATE OF SERVICE

I certify that on February 4, 2019, I electronically filed this brief with the Clerk of Court using the CM/ECF system.

                                                            */s/ Cameron T. Norris*