IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SPEECH FIRST, INC., <br> *Plaintiff*, <br><br> v. <br><br> GREGORY L. FENVES, <br> *Defendant*. | Case No. 1:18-cv-1078-LY |

**PLAINTIFF'S RESPONSE TO, OR IN THE ALTERNATIVE MOTION TO STRIKE, DEFENDANT'S OBJECTIONS TO THE DECLARATION OF NICOLE NEILY**

The first sentence of—and entire premise behind—the University's objections to the Neily declaration is false. Citing nothing, the University asserts that "[e]vidence offered in support of an application for temporary injunctive relief is subject to the standards articulated in the Federal Rules of Evidence." Objs. 1. Yet the Federal Rules of Evidence emphatically do *not* apply to preliminary injunctions. The University's "objections" are thus procedurally improper and should be denied for that reason alone. The University's objections are also beside the point because, in its response to Speech First's preliminary-injunction motion, the University never even *challenges* the element of Article III standing that the Neily declaration supports. Finally, if the Court reaches the University's objections, they are meritless anyway. The Neily declaration is well-supported: Nicole Neily is the President of Speech First, knows its members, and is speaking from personal knowledge. The Neily declaration does not contain hearsay; and even if it did, the hearsay would fall under the "then-existing state of mind" exception. Nor is there any requirement that Speech First's standing members (who are not parties to this litigation) reveal their identities. The University's suggestion that students cannot challenge its speech restrictions unless they provide their names—the same students who *fear retribution* for expressing their sincerely held views on campus—speaks volumes about the University's supposed "commitment to protect free speech rights." Resp. 1. Its objections should be stricken or overruled.

**I.     The University's objections are improper because the Federal Rules of Evidence do not apply at the preliminary-injunction stage.**

As the Supreme Court told the University decades ago, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The federal circuits unanimously agree that "[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *accord Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, … the district court may rely on otherwise inadmissible evidence, including hearsay evidence."); *G.G. ex rel.*

1

*Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725-26 (4th Cir. 2016) (agreeing with seven other circuits that "district courts may look to … inadmissible evidence when deciding whether a preliminary injunction is warranted"), *vacated on other grounds*, 137 S. Ct. 1239 (2017); Wright & Miller, 11A Fed. Prac. & Proc. Civ. §2949 (3d ed.) (explaining that the rule requiring evidence to "be admissible" does "not apply in the [preliminary-injunction] context"). The Rules of Evidence obviously do not apply because declarations, like the ones both parties submitted here, "'are often received in preliminary injunction proceedings'" but "are ordinarily inadmissible at trials." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997).

Contrary to the University's suggestion, Objs. 1, district courts do not consider "inadmissible evidence" only in time-sensitive emergencies; the Rules of Evidence *never* apply to preliminary injunctions. While the need for "quick action … to prevent irreparable harm" is an "additional reason" why the Rules do not apply, *Dixon*, 835 F.2d at 558, it is not the main one. The main reason is that nothing in the text of Federal Rule of Civil Procedure 65 (which governs preliminary injunctions) requires declarations to "set out facts that would be admissible in evidence," in noted contrast to Rule 56 (which governs summary judgment). *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718-19 (3d Cir. 2004); *Cobell v. Norton*, 391 F.3d 251, 260-61 (D.C. Cir. 2004); 11A Fed. Prac. & Proc. Civ. §2949. Another reason is that "[a] preliminary injunction is just that—preliminary"; its "limited purpose" is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Cobell*, 391 F.3d at 261; *Camenisch*, 451 U.S. at 395; *accord* 11A Fed. Prac. & Proc. Civ. §2949. Yet another reason for not applying the Rules of Evidence is "the doctrine that district courts have wide discretion in granting preliminary injunctions." *Dixon*, 835 F.2d at 558.

The University models its "objections"—down to the formatting of its table—on *Jones v. American Council on Exercise*, 2017 WL 991005, at *1 (S.D. Tex. 2017), but that case provides no support for its strategy. For starters, the *Jones* court chastised the defendant for raising objections "laundry list"

2

style in a table. *Id.* at *1 n.1. The *Jones* court then proceeded to overrule 99% of the defendant's objections in full or in part, reasoning that "'a preliminary injunction proceeding is not subject to jury trial procedures'" and the plaintiff could "present his evidence in a more robust form" at trial. *Id.* at *1-10. True, the *Jones* court *ruled* on the objections, rather than rejecting them outright (as Speech First asks the Court to do here). But that is because no party asked the *Jones* court to reject the objections as procedurally improper. *See* Doc. 40, No. 4:15-cv-03270 (S.D. Tex.). That argument would have been pointless because the declarations were simultaneously being used to litigate a motion for summary judgment, where the Rules of Evidence *do* apply. *See id.*, Doc. 37 & exhibits.

Because "'[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings,'" "challenges to the admissibility of [evidence] are inappropriate at this stage in the proceedings." *Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr., LLC*, 503 F. App'x 616, 620 (10th Cir. 2012). Thus, contrary to the University's requests, it would be inappropriate for this Court to "sustain" any "objections" or "deem" any evidence "inadmissible." Objs. 8. Instead, the Court should either strike the University's objections, or simply overrule them as improper. *See, e.g., Stemtech Int'l Inc. v. Drapeau*, 2016 WL 7443181, at *15 (W.D. Tex. 2016) (overruling defendant's objections that the plaintiff's testimony was "hearsay not within any exception or [w]as speculation lacking foundation" because "the Court may consider otherwise inadmissible evidence at the preliminary injunction stage"); *June Med. Servs. LLC v. Kliebert*, 158 F. Supp. 3d 473, 494 n.30 (M.D. La. 2016) (similar); *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 956 (W.D. Tex. 2011) (denying defendant's motion to strike plaintiff's declarations because the Rules of Evidence do not apply to preliminary injunctions), *vacated in other part*, 667 F.3d 570 (5th Cir. 2012); *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F. Supp. 3d 788, 797 n.1 (S.D. Tex. 2017) (similar).

## II. The University's objections are irrelevant because they do not undermine the weight of Speech First's evidence on any issue in dispute.

At most, objections "under the Federal Rules of Evidence go[] to weight, not preclusion, at the preliminary injunction stage." *Mullins v. N.Y.C.*, 626 F.3d 47, 52 (2d Cir. 2010). If the Court decides to construe the University's objections as challenging the weight of the Neily declaration, rather than its admissibility—something the University does not ask the Court to do—the University's objections would still fall flat. Speech First submitted the Neily declaration to support one element of its Article III standing. While the University's response to the preliminary-injunction motion challenges Speech First's standing, its challenge has *nothing to do with that element*.

The parties agree that Speech First has standing if the challenged policies "objective[ly] chill" its members' First Amendment rights. *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012). The parties also agree that Speech First has proven objective chill if three requirements are met: (1) its members "have alleged an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) their "intended future conduct is arguably proscribed by the [policies] they wish to challenge," and (3) "the threat of future enforcement of the [policies] is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014) (cleaned up); *McGlone*, 681 F.3d at 729; *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). In its response to Speech First's preliminary-injunction motion, the University challenges only the last two requirements. Resp. 2-9. Yet those requirements turn on objective, legal considerations—not facts in a declaration.

The second requirement—whether the policies "arguably proscribe[]" protected speech—turns on the text of the policies. And the related question of whether the consequences of violating a policy are sufficient to chill speech turns on an objective, reasonable-person standard. The question is not whether the challenged policies deterred *this* plaintiff from speaking, but whether the challenged policies would deter a reasonable person of ordinary firmness from speaking. *See David v. Baker*, 129 F. App'x 358, 361 (9th Cir. 2005) (explaining that "objective 'chill'" exists when, "[a]lthough Plaintiffs

4

themselves may not be deterred by Defendants' alleged conduct," the conduct "'would chill or silence a person of ordinary firmness from future First Amendment activities'" (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999))); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230-31 (7th Cir. 2015) (explaining that coercive government action short of direct regulation violates the First Amendment "even if it turns out to be empty—the victim ignores it, and the threatener folds his tent"); *ACLU v. Fla. Bar,* 999 F.2d 1486, 1492 n.13 (11th Cir. 1993) (explaining that objective chill is an objective, reasonable-person standard). Facts pertaining to particular plaintiffs are not dispositive.

The third requirement—a credible threat of enforcement—is also an objective, legal determination. "'[W]hen dealing with [policies] that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" *Rangra v. Brown*, 566 F.3d 515, 519 (5th Cir. 2009), *on reh'g en banc*, 584 F.3d 206; *McKinley v. Abbott*, 2010 WL 11545260, at *4 (W.D. Tex. 2010) (Yeakel, J.), *aff'd in relevant part*, 643 F.3d 403, 407 (5th Cir. 2011); *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999); *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996). "Compelling contrary evidence" means "a long institutional history of disuse, bordering on desuetude"—something the University does not allege here. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003); *Doe v. Bolton*, 410 U.S. 179, 188 (1973). Thus, the "mere existence" of the challenged policies creates the credible threat against Speech First's members. *Ctr. for Individ. Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003). No declaration, including the many that the University filed here, could alter or dispel that credible threat. *See Backpage.com*, 807 F.3d at 234 ("[Plaintiffs] are unlikely to reconsider [their decision not to speak] on the basis of a lawyer's statement … months after the initial threat."); *Fla. Bar*, 999 F.2d at 1494 (explaining that court papers do not remove a credible threat because they are not binding on the declarants or future defendants).

Speech First submitted the Neily declaration to prove the first requirement of objective chill—that its members have "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 161. Unlike the second and third requirements, this requirement is factual, as it turns on the member's actual beliefs and intentions to speak. But the University, in its response to Speech First's preliminary-injunction motion, does not even *challenge* this requirement, much less offer evidence contesting the members' views or intentions. Thus, the Neily declaration stands entirely unrebutted on these points, which means the Court can simply accept it as true. *See Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976) ("[U]ncontroverted affidavits filed in support of [a] motion for a preliminary injunction are taken as true."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc) ("It was within the discretion of the district court to accept … hearsay for purposes of deciding whether to issue the preliminary injunction," especially because "[n]o affidavits countering the inference were presented by the [defendants]."); *Tujague v. Adkins*, 2018 WL 4816094, at *1 n.2 (E.D. Tex. 2018) (similar).

**III.     The University's objections are unfounded even on their own terms.**

Even taking the University's objections at face value, they should be overruled. Paragraphs 6-9 of the Neily declaration are well-supported, are not hearsay, and are not impermissibly anonymous.

<u>Foundation/Speculation</u>: Although declarations in support of a preliminary injunction do not need to be based on personal knowledge, *Cobell*, 391 F.3d at 260-61, the Neily declaration is. As explained in the unchallenged parts of her declaration, Ms. Neily is the President of Speech First. ¶ 1. Speech First is a membership organization that, among other things, files litigation to vindicate the rights of college students. ¶ 2. In carrying out that mission, Ms. Neily works with students whose rights are being violated on campus, and if those students are members of Speech First and agree to be standing members in the litigation, Speech First will file a lawsuit on their behalf. Here, for example, Speech First has "members who are current students at the University," and Ms. Neily is "personally

6

familiar" with them through her role as President and her work on this litigation. ¶¶ 3-4. Thus, she *personally knows* that these students hold controversial views and want to voice them. This is all obvious from her declaration, which she made under penalty of perjury. Even if it wasn't obvious, her "personal knowledge" is "'reasonably inferred from [her] position[] and the nature of [her] participation in the matter[].'" *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005); *see, e.g.*, *Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 110-11 & n.10 (1st Cir. 2006) (holding that, because the declarant was "the President of the [association]," his "allegations regarding its members' injury in fact" were "based on personal knowledge" and were "adequate" to prove associational standing); *Am. Tradition Inst. v. Colorado*, 876 F. Supp. 2d 1222, 1233 n.6 (D. Colo. 2012) ("[T]he Court cannot presume at this early of the proceedings that … ATI's Executive Director[ ]does not have personal knowledge regarding the injuries allegedly suffered by ATI's … members").

Hearsay: The University's hearsay objections are puzzling. *All* declarations (including the ones submitted by the University) are hearsay, since they are out-of-court statements offered for the truth of the matter asserted. *See Planned Parenthood of Ind. & Ky., Inc. v. Comm'r*, 273 F. Supp. 3d 1013, 1030 (S.D. Ind. 2017), *aff'd*, 896 F.3d 809 (7th Cir. 2018); *Updatecom, Inc. v. Firstbank P.R., Inc.*, 2011 WL 13210046, at *5 (D.P.R. 2011). Yet "'[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings,'" *Dixon*, 835 F.2d at 558, and "[i]t is well established that hearsay testimony is admissible in [these] hearings," *Nelson ex rel. NLRB v. Advocate Health & Hosps. Corp.*, 273 F. Supp. 3d 919, 929 n.5 (N.D. Ill. 2017). Regardless, the University does not identify any "statement" in the Neily declaration (other than Ms. Neily's own) that could qualify as hearsay. Fed. R. Evid. 801(c),(a). If the University means that her knowledge is *based on* hearsay—since she learned about the students' opinions, intentions, and fears from the students themselves—that argument fails. The students' statements to Ms. Neily would fall under the hearsay exception for "the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3); *see, e.g.*, *Log Cabin*

7

*Republicans v. United States*, 716 F. Supp. 2d 884, 888 n.3 (C.D. Cal. 2010) (holding that an anonymous association member's statement that "the Act chilled his speech" fell within the "then-present state of mind" hearsay exception), *vacated for subsequent mootness*, 658 F.3d 1162 (9th Cir. 2011).

<u>Anonymity</u>: The University repeatedly complains about the "[a]nonymity of Speech First's members," citing three cases where courts prohibited *plaintiffs* from proceeding under pseudonyms. Objs. 3-5, 7-8. But the sole plaintiff in this case—Speech First—has sued the University in its own name and is not seeking anonymity. While its *standing members* are using pseudonyms, standing members "are not of course parties to the litigation." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958). Thus, the University's cases, and the rules they apply to anonymous parties, are irrelevant here. *See Am. Tradition*, 876 F. Supp. 2d at 1234 n.7 (disagreeing that "[an association] cannot rely on anonymous [members] to show standing" early in the litigation and faulting defendants for relying on "cases involving the anonymity of *named Plaintiffs*, not the anonymity of *members of Plaintiff associations*"); *cf.* Fed. R. Civ. P. 10(a) (requiring complaints to "name all the *parties*" (emphasis added)).

There is no corresponding rule limiting the anonymity of standing members. The Fifth Circuit has "never held that [an association] suing as a representative must specifically name the [members] on whose behalf the suit is brought." *Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999) (citing *Church of Scientology of Calif. v. Cazares*, 638 F.2d 1272, 1278 (5th Cir. 1981), and *Cong. of Racial Equal. v. Douglas*, 318 F.2d 95, 102 (5th Cir. 1963)); *accord NRDC v. Mineta*, 2005 WL 1075355, at *5 (S.D.N.Y. May 3, 2005) (holding that declarations from "the organization principals" could alone establish standing, since "individual members" need not "be identified in order to confer organizational standing"); *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) (explaining, at the preliminary-injunction stage, that "we have not required that … organizational plaintiffs name names"); *FAIR, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 286-89 (D.N.J. 2003) (similar), *aff'd*, 446 F.3d 1317 (3d Cir. 2006). Such a rule would be especially inappropriate "[i]n a case … involving a facial

8

challenge to a [policy] on First Amendment grounds, [where] the prudential limitations of organizational standing are generally relaxed in light of the societal interests that are implicated." *NYC C.L.A.S.H., Inc. v. N.Y.C.*, 315 F. Supp. 2d 461, 468 (S.D.N.Y. 2004). Moreover, "to hold that Article III requires an organization to name those of its members who would have standing would be in tension with one of the fundamental purposes of the associational standing doctrine—namely, protecting individuals who might prefer to remain anonymous." *New York v. U.S. Dep't of Commerce*, 2019 WL 190285, at *74 n.48 (S.D.N.Y. Jan. 15, 2019). By allowing standing members to remain anonymous, courts respect their constitutional right to anonymously pursue litigation through associations. *See NAACP*, 357 U.S. at 460-63.

Even under the rules that govern anonymous parties, Speech First's members would have a right to proceed anonymously. While there is "no hard and fast formula for ascertaining whether a party may sue anonymously," *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981), several relevant factors weigh in favor of it here. **First**, Speech First is "challenging the constitutional … validity of government activity"; unlike private defendants, the government has no interest in protecting its "reputation" from anonymous allegations. *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). **Second**, Speech First's members have "a desire to participate in … activities" that the University currently "proscribe[s]"; courts are reluctant to ask plaintiffs to publicly "admit that they … wish[] to engage in prohibited conduct." *Id.* That should be especially true for college students, who have tens of thousands tuition dollars on the line and depend on the University for housing, grades, letters of recommendation, and future employment.

**Third**, many people on campus are "hostile to the viewpoint[s]" that Speech First's members hold. *Stegall*, 653 F.2d at 186. At a recent town hall, for example, students "shouted down" a student who said he did not support affirmative action. Haurwitz, *Students at Town Hall Say UT Tolerates Racism, Discrimination*, Statesman (updated Sept. 25, 2018), atxne.ws/2WOq4AW. In fact, Speech First's

9

members can expect "harassment and perhaps even violent reprisals if their identities are disclosed." *Stegall*, 653 F.2d at 186. During the confirmation hearing for now-Justice Kavanaugh, for instance, the Young Conservatives of Texas (YCT) held a pro-Kavanaugh rally. In retaliation for that speech, a local group named the Autonomous Student Network doxxed the YCT members, posting their names, phone numbers, emails, majors, and jobs online so that they could be targeted for reprisals. Sabes, *Communism Sympathizers Post Numbers, Jobs of Pro-Kavanaugh Protesters*, Campus Reform (Oct. 15, 2018), bit.ly/2t2oj5t. Speech First's members reasonably fear that a similar fate would befall them if their participation in this lawsuit becomes public knowledge.

To be sure, if the University continues to dispute Speech First's standing at the later stages of this litigation, Speech First might need to disclose the identities of its standing members. But it would do so in an orderly fashion, under seal, after giving notice and securing both a protective order and assurances from the University that it will not retaliate against its members. *See, e.g.*, *Students for Fair Admissions, Inc. v. Univ. of N.C.*, 2018 WL 4688388, at *7 (M.D.N.C. 2018); *Perez v. Abbott*, 253 F. Supp. 3d 864, 934 (W.D. Tex. 2017). There is no rule requiring Speech First to do that now, at this early stage of the litigation. *Supra* 8-9. Rightly so, since the only question presented at the preliminary-injunction stage is whether Speech First has "a *likelihood* of standing." *N.J. Hosp. Ass'n v. Burwell*, 2016 WL 1048023, at *10 (D.N.H. 2016) (emphasis added). The Court can make that determination based on the text of the challenged policies, commonsense observations about the dynamics between university administrators and college students, and the unrebutted sworn statements in the Neily declaration. The specific names of Speech First's standing members would add nothing.

## CONCLUSION

This Court should overrule or strike the University's objections to the Neily declaration.

                                                                             Respectfully submitted,

Dated: February 4, 2019                        /s/ *Cameron T. Norris*

                                                        William S. Consovoy
                                                        Jeffrey M. Harris
                                                        Cameron T. Norris
                                                        CONSOVOY MCCARTHY PARK PLLC
                                                        3301 Wilson Boulevard, Suite 700
                                                        Arlington, VA 22201
                                                        (703) 243-9423
                                                        will@consovoymccarthy.com
                                                        jeff@consovoymccarthy.com
                                                        cam@consovoymccarthy.com

                                                        *Counsel for Plaintiff Speech First, Inc.*

## CERTIFICATE OF SERVICE

I certify that on February 4, 2019, I electronically filed this response/motion with the Clerk of Court using the CM/ECF system.

*/s/ Cameron T. Norris*